UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 6, 2006
Decided December 20, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-1503

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 05 CR 30002 |
| KAREN D. COHEN, <br> *Defendant-Appellant*. | Jeanne E. Scott, <br> *Judge*. |

**O R D E R**

Karen D. Cohen was convicted by a jury of committing perjury in violation of 18 U.S.C. § 152(3) based on statements she made before the United States Bankruptcy Court in December 2000. Cohen contends that her conviction should be overturned because the questions posed to her during the bankruptcy proceedings were fundamentally ambiguous. Because we conclude that the questions were not ambiguous, let alone, fundamentally ambiguous, we affirm her conviction.

## I. BACKGROUND

In 1982, Cohen won a million dollar lottery prize from the Illinois State Lottery ("Lottery"), which was to be paid in twenty annual installments of $34,500 (after taxes)

ending in 2001. At the time Cohen won the lottery, she was married to Steven Shanle. They divorced the following year, and as part of their divorce settlement, Cohen agreed to pay Shanle $9000 annually until 2001 to resolve the dispute over whether the lottery prize was marital or non-marital property. Until 1996, Shanle received his annual payments from Cohen as arranged.

In January 1997, Cohen took out a $60,000 loan, which she agreed to repay in four $25,500 annual installments. Pursuant to the terms of the loan agreement, Cohen opened a bank account in which the Lottery would deposit annual lottery payments and gave her lender sole authority to withdraw funds from the account. The agreement also acknowledged Shanle's right to receive $9000 of the lottery winnings each year, but did not provide the lender with the authority to send any money directly to Shanle. Instead, the lender agreed to pay Cohen $9000 as a yearly installment so that she might fulfill her obligation to Shanle.

Later that year, the Lottery deposited an annual lottery payment into the bank account. The lender collected its share and distributed the $9000 balance to Cohen. One month later, Cohen sent a $9000 check to Shanle. This was the last lottery payment that Cohen made to Shanle.

In 1998, the lender again collected its share of the annual lottery payment and sent Cohen a check for $9000. Cohen deposited the check in June 1998, but, as she indicated at her perjury trial, she failed to forward those funds to Shanle. Shanle thereafter obtained a court order holding Cohen in contempt in part for failing to provide him with his portion of the 1998 lottery winnings. The court ordered Cohen to pay Shanle the $9000 payments due in 1998 and 1999. Those funds were garnished from Cohen's 1999 lottery payment.

Since the 1999 lottery funds had been garnished, Cohen's lender did not receive any payment on Cohen's loan in 1999, resulting in the default of the loan. The lender therefore filed a garnishment action against the Lottery, and the Lottery was ordered to pay Cohen's lender the approximately $70,000 due on the loan out of the remaining lottery proceeds.

Cohen filed for bankruptcy in July 2000 and sought to discharge, among other debts, her obligation to pay Shanle the $9000 payments for 2000 and 2001. Shanle filed an objection to the discharge, claiming that Cohen had embezzled his portion of the lottery winnings.

At the bankruptcy proceeding, Cohen answered questions posed by Shanle's lawyer about whether she had received Shanle's portion of the lottery winnings. After the court established that Cohen assigned her rights to the lottery proceeds to her lender, the following exchange ensued between Shanle's attorney and Cohen:

Q.     And when you did that [assigned rights to the lottery proceeds], you sold

> not only your right to the $37,500 or whatever it was after taxes, but you also sold Mr. Shanle's $9,000?

A.    No, no, there was an agreement in that I did not receive his $9,000, that it would be kept back and he would receive it every year.  I did not get that money, no.

. . .

Q.    And you didn't pay to [Shanle] his $9,000?

A.    Because they were to pay it.

Q.    You didn't pay the $9,000, correct?

A.    I didn't get it.  They gave –

Q.    So your answer is that you did not, correct?

A.    I didn't pay it.  I didn't have it.

App. at 30-31.  Based on Cohen's representations that she thought her lender, and not she, was obligated to make payments to Shanle, the bankruptcy court discharged the $18,000 she owed to Shanle.

After discharging Cohen's debt, the bankruptcy judge directed that an investigation be undertaken to determine whether Cohen's lender had possession of any lottery proceeds due to Shanle.  During the course of the investigation, the lender produced copies of cancelled checks for $9000, which had been issued to Cohen in 1997 and 1998.  Subsequently, Federal Bureau of Investigation (FBI) agents interviewed Cohen at her home.  During the interview, Cohen again stated that it was her lender's responsibility to pay Shanle his $9000 portion of the lottery winnings on an annual basis.  When Cohen was shown the 1997 and 1998 cancelled checks, she confirmed that she had endorsed the checks, but denied ever receiving them.  She explained that the checks may have been pre-signed at the time she obtained the loan.  Following the FBI investigation, Cohen was indicted for perjury.

At her perjury trial, Cohen offered an explanation for her testimony before the bankruptcy court.  She stated that when she testified at the bankruptcy proceeding that she did not receive Shanle's money, she meant that she did not receive Shanle's money at the time that she obtained the loan in 1997.  She claimed her answers were not false because she believed Shanle's attorney was asking about whether she had failed to pay Shanle $9000 out of her initial loan of $60,000.  She testified that her answer "because they were to pay it" meant that she did not pay the $9000 at the time she received the loan because her lender was going to pay her the $9000 at a later date. Cohen also acknowledged that she was interviewed by FBI agents regarding the two checks, and said that she thought the agents were questioning her about the

checks for 2000 and 2001.  Disbelieving Cohen, the jury returned a guilty verdict.

## II.  ANALYSIS

In reviewing a defendant's sufficiency of the evidence challenge, we view all evidence in the light most favorable to the government.  *United States v. Olson*, 450 F.3d 655, 664 (7th Cir. 2006).  We will only reverse the conviction if we conclude that no rational trier of fact could have found the defendant guilty of the charges beyond a reasonable doubt.  *Id.*

Cohen contends that there was insufficient evidence to support her perjury conviction because the government did not prove that she made a "false declaration." *See* 18 U.S.C. § 152(3) (Any person who "knowingly and fraudulently makes a false declaration . . . under penalty of perjury" during a bankruptcy proceeding is guilty of perjury).  She asserts that the questions posed to her during the bankruptcy proceeding were "fundamentally ambiguous," (and therefore inappropriate for submission to a jury) because Shanle's attorney did not refer to a specific year when he questioned her about whether she had received Shanle's lottery proceeds.

The Seventh Circuit has held that when a question and answer may have "more than one meaning standing alone, their intended meaning is ordinarily" a jury issue, but where there is a "fundamental ambiguity," the issue must be taken from the jury. *United States v. Martellano*, 675 F.2d 940, 942 (7th Cir. 1982).  This court has yet to squarely define what constitutes a fundamentally ambiguous question, and we need not do so here.  When we consider the questions asked of Cohen in context, as we must, the questions are neither ambiguous, nor fundamentally so.  *See Martellano*, 675 F.2d at 943 ("The context of the question and answer is often of critical importance if it is claimed the question was ambiguous or was misunderstood as it is in this case.").

Although Cohen claims that she was hopelessly confused by Shanle's attorney's questions, it is clear that Shanle's attorney was referring to Cohen's obligation to pay Shanle in 1998.  As the government noted at oral argument, the questions posed to Cohen could only relate to the years following her receipt of the loan–1997, 1998, 1999, 2000, 2001.  Given that the bankruptcy proceeding occurred in 2000, Shanle's attorney could not have been accusing Cohen of failing to pay the 2001 debt, which was not yet due.  Nor could Shanle's attorney have been referring to the 2000 or 1999 checks, which were garnished by her lender and Shanle, respectively.  Since Cohen paid Shanle his $9000 in 1997, only the 1998 check could have been at issue.

Nonetheless, if we assume that Cohen was somehow confused by Shanle's attorney's questions, we note that she offered the same responses to the bankruptcy judge's subsequent questions of unmistakable clarity:

> Q.      Okay.  So in the documents that you signed with them [the lender], it

> authorized them to cash the [lottery] check.
>
> A.    Right.
>
> Q.    And you indicate that it was your understanding with whoever that $9,000 was to be withheld to be paid to Mr. Shanle.
>
> Q.    That's correct.
>
> A.    Who was to withhold that money, the Lottery or [the lender]?
>
> Q.    I was under the impression that [the lender] was to do that.
>
> A.    Okay. So that when they got the check, they were to take out 9,000 for Mr. Shanle and then the balance went to them?
>
> Q.    Right.

App. at 33-34. Without question, then, Cohen intended to represent to the bankruptcy court that the obligation to make the annual $9000 payments to Shanle always rested with the lender. Despite her contrary representation, the jury could have found that Cohen knew that she, in fact, had the obligation to pay Shanle his annual lottery payment. Indeed, Cohen admits that in 1997 she deposited a $9000 check received from her lender and turned that sum over to Shanle.

Finally, that Cohen boldly denied having received two $9000 checks bearing her endorsement (dated in 1997 and 1998) from the lender suggests a pattern of deception and cuts against any argument that her prior false testimony was unintentional or the result of misunderstanding. The jury was certainly at liberty to conclude that Cohen intentionally made a false declaration during the course of the bankruptcy proceedings.

The judgment of the district court is therefore AFFIRMED.